## LYMAN COOK & others *vs.* THOMAS G. KENT.

The articles of a loan and fund association, incorporated in 1854, provided that each member should pay, during the existence of the corporation, monthly dues and certain fines; that, as often as the fund of the corporation should amount to a certain sum, it should be applied to the redemption of the share of that member who would bid the greatest sum, by way of discount, for the privilege of taking out his distributive share at once; that the member whose share was so redeemed should cease to be a member, but should give a bond and mortgage for the payment to the corporation, its successors or assigns, of the sum advanced, in the manner following, namely, the monthly dues, "to be applied in liquidation of the principal sum," interest monthly until the monthly dues should amount to the principal sum, and fines; but that neither the interest nor fines should be deducted in computing the amount due on the mortgage. The articles also provided that the entries in the books of the secretary should be *primâ facie* evidence against any member, but an appeal might be taken to a meeting of the association; and that a quorum of a meeting should consist of twenty-five members; and further provided for the election, duties and removal of officers. The secretary of the association purchased and took assignments to himself of all the bonds, mortgages and assets of the association, and of all the unredeemed shares. *Held*, that the liability to pay monthly dues and fines then ceased, and that a member, who had redeemed his share, and given a mortgage for the sum advanced, was entitled to redeem the mortgage on payment of the amount due thereon at the time of such assignments, with interest.

BILL IN EQUITY by the husband and three sons of Lucina Cook to redeem land in Mendon from a mortgage given by her and her husband to the Mill River Loan Fund Association, and by it assigned to the defendant. The case was referred to a master, and the material facts, as they appeared from his report and the pleadings, on which the case was reserved for the determination of the full court, were as follows:

The association was a corporation, chartered in 1854, doing business under the statutes respecting loan and fund associations, and having certain printed by-laws, the material portions of which are given in the margin.* Lucina Cook, on July 27,

* "ART. 1. *Name.* This association shall be called *The Mill River Loan Fund Association*, and shall hold a meeting monthly, on the first Monday of each and every month, during its continuance, at such places as the association shall agree upon by vote of its members, twenty-five of whom shall constitute a quorum for the transaction of business. Special meetings may be held at any time, when called by the president, on the application of any twelve members in writing, three days' notice thereof being given in the manner prescribed in Article 26. The meeting for April, May, June, July, August and September,

1859, became a member of the association and the purchaser and holder of five and a half shares of its capital stock, and pursuant

shall be held at eight o'clock, P. M.; and during all other months of the year at seven o'clock, P. M.

"ART. 2. *Members.* All persons, who shall pay the entrance fee, and hold one or more shares, and sign the articles, shall be members of this association.

"ART. 3. *Officers.* The officers of this association shall consist of a president, vice-president, twelve directors, secretary, attorney and surveyor. All the officers of this association shall be elected annually hereafter, on the first Monday in March, by the members of this association, by ballot; and no person shall hold any office, after the first election, who has not been a member of the association for four months previous to his election. The president and vice president shall be members of the board of directors."

"ART. 10. *Monthly Dues and Fines for Nonpayment.* Every member of this association shall, during the week next preceding every regular meeting, pay two dollars as monthly dues for each share held by him, and for any neglect in so doing shall be fined for every nonpayment on each share as follows: for the first month, ten cents; second month, twenty-five cents; third month, thirty-seven cents; fourth month, fifty cents; and every succeeding month, one dollar. All shares, on which no payment has been made for six months, shall be forfeited. All payments by a member shall be applied to the oldest charge against him on the books. No payment of monthly dues or fines shall be received from any member except for the whole amount of such dues and fines due by such member at the time of tendering such payment, except allowed by the board of directors. Members paying their dues three months or more in advance shall be entitled to interest at the rate of six per cent. per annum.

"ART. 11. *Entrance Fee.* Every member of this association shall pay an entrance fee of one dollar per share, until the conclusion of the second regular meeting of the association, after which time new members shall pay such increased entrance fee and the monthly dues from the commencement of the association, as the board of directors shall judge to be sufficient to place the new members upon the same footing as the original shares. All shares on which an entrance fee only has been paid shall become forfeited in two months after they shall have been subscribed for. The arrears for new shares shall be paid in full, or in such instalments, and under such penalties, as the board of directors shall determine.

"ART. 12. *Removal of Officers.* Any trustee, officer, or attorney of this association may be removed in the manner hereinafter provided, for misconduct, neglect of duty, or any other sufficient cause. All charges against any trustee or officer shall be made in writing, signed by the member making such charge, and shall be filed with the president and secretary, who shall lay the

to its by-laws bid off said five and a half shares for redemption
at a discount of $145 a share from the estimated ultimate value

same before the board of directors at their next meeting, and shall give per-
sonal notice to the person against whom the charges are preferred. The board
may suspend, if they deem it necessary, such person, while said charge is
pending. No officer shall vote upon any proceeding by the board, upon any
charge against himself, or preside at the board during the investigation thereof.
The directors may dismiss such charge as showing no ground of complaint.
Should the board of directors, after the investigation of any charge preferred,
recommend the removal of the person against whom such charge is preferred,
he may be so removed by a majority of the votes of the members present,
which shall be by a ballot. The decision of the meeting shall be final. If the
directors, upon the investigation of any such charge, shall find that the same
was frivolous, malicious, or without probable cause, such finding shall be en-
tered in the minutes, and they may direct the secretary to strike from the list
of members the name of the member making such charge, and the same shall
be done accordingly. All dues paid into the association by such member, upon
shares not redeemed, shall be returned to him by the board of directors, with-
out interest. His said shares shall be cancelled, and he shall ever after be in-
capable of becoming a member of the association. Upon the removal of any
director, officer or attorney, another shall be elected in his place, to fill the
vacancy, at the same meeting; such election to be conducted in the same
manner as regular elections. Should the member preferring such malicious or
frivolous charge be a director, officer or attorney, instead of striking his name
from the list of members the board of directors shall report the facts, with their
opinion thereon, at the next regular meeting, and such director, officer or at-
torney may be removed by a vote of the meeting, in the same manner as above
provided in relation to the removal upon charges preferred. If removed, his
name shall be stricken from the list of members in the same manner above
provided."

"ART. 14. *Bidding for Loans.* Whenever the funds of the association shall
amount to the sum of five hundred dollars, (one share,) the same shall be put
up to competition among the members, by the president at a regular meeting
of the association, and the member bidding the greatest discount for the same
shall be entitled to it for the purpose of building or purchasing freehold or
leasehold premises, or removing incumbrances therefrom, which he shall mort-
gage to the association for the payment of his subscriptions, interest, fines, &c.
In case a member is desirous of procuring more than one share, he shall have
the privilege (after having offered the highest discount on one) of receiving
fourteen more shares, at the same amount of discount, out of the next moneys
to be received, provided he subscribes and pays the value of such additional
shares as have not already been subscribed and paid for. But no member

of each share, which was fixed at $500, and thereupon received, in the manner following, $355 on each of the shares, amounting

---

shall purchase more than fifteen shares. The purchaser of any shares shall pay an interest, from the time of purchase, of six per cent. payable monthly, as a redemption fee, and in case the member so purchasing shall fail to comply with the terms of purchase he shall be charged with the interest for the time the association may be deprived of the same through his neglect. Members purchasing may subscribe for a fractional part of a share, not less than a quarter. The member so purchasing shall, within one week after becoming the purchaser of such share or shares, tender to the secretary, to be submitted for the approval of the proper officers, a written statement of the location, description and value of the property which he proposes as security for the money to be advanced by the association. If the officers are satisfied with the sufficiency of the value of the security thus offered, the association shall advance the amount to the member, when the attorney of the association shall be satisfied with the title thereto, and upon the execution of proper instruments. In case the member should build, the money shall be advanced in sums necessary for the prosecution of the building until its completion, the association executing an agreement to that effect at its own expense. In such case, the member shall produce a written certificate from the builder engaged in the erection of the building, certified by the surveyor of the association, of the sum necessary for such purpose. But no money shall be advanced for the purpose of building until the first story of the premises shall have been erected, unless the board of directors are satisfied that it is safe and proper so to do, and a bond and mortgage, under the direction of the attorney, shall have been executed and delivered by the member to the association."

"ART. 16. *Substitution of Mortgagor.* Whenever any mortgagor to this association shall sell the mortgaged premises, the purchaser thereof, if not already a member, may become so on being elected and paying an entrance fee of two dollars per share, and assuming all the stipulations, agreements and conditions of the original mortgagor, by a proper instrument drawn by the attorney of the association, to be executed at the expense of the purchaser, in which case the original mortgagor shall receive a discharge (at his expense) from all personal liability on account of such mortgage.

"ART. 17. *Change of Mortgaged Premises for others.* In case any mortgagor to this association shall wish to change the mortgage from the original mortgaged premises, he may do so upon giving security of sufficient value, to be approved by the proper officers, and paying a transfer fee of one dollar per share, and he shall receive a discharge of all papers connected with the original mortgage.

"ART. 18. *Redemption of Mortgaged Premises.* When any mortgagor to this association shall desire to redeem his premises from the mortgage upon it,

in all to $1952.50. She received in cash $1100. There was applied in payment of entrance fees $148.50 ; in payment of dues

he shall give seven days' notice to the secretary before the next meeting of the board of directors. The secretary shall lay the matter before them, and they shall decide the amount to be paid by the mortgagor. In case this sum is agreed to by the mortgagor, he shall pay the said amount and receive a discharge and release of the mortgaged premises, and all the papers and documents connected therewith.

" ART. 19. *Transfer of Shares.* Any member being clear on the books of the association may transfer his or her share or shares to any person who is or shall become a member, as provided in article second, and pay a transfer fee of one dollar per share. In such case the transferee shall be entitled to all the privileges of the original holder.

" ART. 20. *Withdrawal of Shares.* In case any member, by reason of sickness, or through misfortune, is unable to continue the payment of his or her subscription to the association, he or she may give notice to the secretary of an intention to withdraw from the association ; and in case the board of directors are satisfied as to the grounds of withdrawal, the monthly dues paid by the party into the association shall be returned. Any person wishing to withdraw for the above reasons or other reasons satisfactory to the directors, and who shall have been a member of the association two years and be clear of the books, shall receive an interest of four per cent., and any member of more than three years' standing shall be entitled to an interest of five per cent., on the amount of funds paid by such member or members into the funds of the association."

" ART. 24. *General Fund.* All fines, monthly dues, fees, bonds, premiums and interest received by the association shall be considered as assets thereof, and be applied to the general fund ; and all moneys received by the association shall be bankable."

" ART. 30. *Effects of Entries made by Secretary.* The entries made by the secretary in the books under his charge, in all matters relating to his office, shall be *primâ facie* evidence of all the matters intrusted in all questions, suits, controversies and disputes between this association, the officers, directors or members thereof, and any other officer or member. Any member feeling aggrieved by any entry made in respect to him may appeal to the association at a regular meeting, and the decision made thereon shall be final and conclusive. Before the adjournment of each meeting, the secretary shall read the minutes thereof, which shall be corrected and ordered for engrossment. At the next meeting the minutes shall be read from the engrossment, and if no further corrections are made shall be final.

" ART. 31. *Termination of the Association.* Whenever it shall appear by the books of the association that there is sufficient money on hand and due the association to pay on each share which has not been redeemed by the associa-

ın arrear, $693 ; for interest from the time of purchase, $6.30 ; and for examination of title, $4.70.

On August 2, 1869, she and her husband executed to the association the mortgage, which it was now sought to redeem, upon her land, and also a bond. The condition of the bond and mortgage was, that she and her husband should pay or cause to be paid to the association, its successors or assigns, the sum of $1952.50 " in the manner following, to wit, $20.76 per month, on or before the first Monday of each and every month, that is to say, $11 as monthly dues, to be applied in liquidation of the said principal sum of $1952.50, and $9.76 as monthly interest at six per centum per annum on the said principal sum, until the said payments of monthly dues at $11 per month amount to the said principal sum of $1952.50 pursuant to the by-laws of the said corporation, whereof the said Lucina Cook is a member, and also all fines which should be charged to her pursuant to the by-laws of the said corporation, during the said period, and also should keep or cause to be kept all other covenants; promises and agreements entered into by her as a member of the said corporation, and a subscriber for five and one half shares thereof, according to the true intent and meaning of the said by-laws." Of the amounts

tion, to the holder thereof, the sum of five hundred dollars over and above all debts and liabilities of the association, all arrears of monthly dues, fines and otherwise shall become payable at once. The board of directors shall then pay, satisfy, and discharge, first, all debts and liabilities of the association, and then pay over to the owner of each unredeemed share an equal dividend of all sums on hand, and which shall afterwards be received, until the whole shall be divided ; and from the time of the commencement of the payment of such dividends no further monthly dues or premiums shall be payable, except that all arrears shall be fully paid up, and the trustees shall deliver to each mortgagor, who has complied with the conditions of his mortgage, a discharge and satis-faction thereof, and all papers connected therewith. After the performance of the foregoing duties, this association shall cease to exist, and it shall not be sooner dissolved, nor shall this article be altered, amended, or repealed, with-out the unanimous consent of all the voting shares belonging to this associa-tion."

" ART. 34. *Shares and par value.* The par value of the shares in this asso-ciation shall be five hundred dollars per share, and the association shall not issue more than one thousand shares."

paid or charged to her only $693 were credited to her on the bond, that being the sum of monthly payments at $11 per month for sixty-three months from January 1, 1854, when the association began business, to the date of the bond and mortgage.

Lucina Cook conveyed all her interest in the mortgaged premises to her four sons in March 1862, and died in the following April. One of the sons afterwards died, leaving his father his heir, who, with the other three sons, brought this bill. None of the plaintiffs ever became members of the association.

On or before November 13, 1866, there was, from time to time, paid and applied in reduction of the principal the sum of $1067, and between August 2, 1859, and November 13, 1866, there was paid from time to time in various sums, never exceeding the interest then due, the sum of $445.56, which was applied as interest on the bond. There was paid and applied as fines after the death of Lucina Cook, the sum of $55.11, and of this sum $29.47 accrued before her decease. No payments were made after November 30, 1866, and on that day the defendant, who was the secretary of the association during the whole period of its existence, purchased of the association all its bonds, mortgages and assets, including the bond and mortgage given by Lucina Cook and her husband, and took assignments thereof to himself from the association, and also purchased and took assignments to himself of all the unredeemed shares of the association from the holders thereof, and on said November 30 the business of the corporation was terminated and its affairs closed.

*T. L. Nelson*, for the plaintiffs.

*T. G. Kent, pro se.*

GRAY, J. The nature and effect of the relations created between a loan fund association and its members under articles of association and bonds and mortgages, containing provisions like those in this case, are defined in many particulars by the express stipulations between the parties and by previous decisions of this court.

Every person becoming a member of the association pays an entrance fee, and is also obliged to pay, during the existence of the corporation, monthly dues of two dollars a share, and, in case

of nonpayment thereof, the fines prescribed by the articles of association; and, in consideration of these undertakings on his part, is entitled to the privileges of a member, the principal of which is the right to share in the final distribution of the fund accumulated by the corporation from the payments made by himself and other members. As often as the fund of the corporation amounts to the sum of five hundred dollars (which is assumed as the par value of one share) it is to be applied to the redemption of the share of that member who will bid the greatest sum by way of discount for the privilege of taking out his distributive share of the fund at once ; charging him, however, until the time of final distribution, by way of " redemption fee," with sums equal to interest at the rate of six per cent. annually on the amount actually advanced to him, being the sum of five hundred dollars deducting the discount ; he thereupon gives a bond and mortgage for the payment to the corporation, its successors or assigns, of the sum advanced,· not at all events, but only in " the manner following," namely, the stipulated monthly dues, " to be applied in liquidation of the said principal sum," and also interest monthly thereon, at the rate of six per cent. annually, until the monthly dues paid amount to the principal sum, pursuant to the by-laws of the corporation, and also all fines charged to him, pursuant to those by-laws, during that period; the member, whose share is thus redeemed, thereby ceases to be a member of the corporation, but continues liable to pay interest, monthly dues and fines according to the terms of his bond and mortgage ; and neither his entrance fee, nor interest or monthly dues so paid, nor fines charged according to the by-laws for nonpayment thereof, are to be deducted in computing the amount due on his mortgage. Articles of Association, 2, 10, 11, 14, 18, 24, 31, 34. *Barker* v. *Bigelow*, 15 Gray, 130. *Delano* v. *Wild*, 6 Allen, 1. *Bowker* v. *Mill River Loan Fund Association*, 7 Allen, 100. St. 1854, *c*. 454, § 7. Gen. Sts. *c*. 59, §§ 7, 8.

It follows that the plaintiffs, having acquired by purchase and descent the title in the land mortgaged by a member of the corporation upon the redemption of her share, are not entitled to redeem the land from the mortgage without paying the interest

on the amount advanced and the monthly dues and fines until November 30, 1866.

But upon that day, as appears by the master's report, the defendant, who was the secretary of the corporation, purchased and took assignments to himself of all the bonds, mortgages and assets of the corporation, and of all the unredeemed shares of its members. In this condition of things, there was no longer a quorum of members necessary for the transaction of business, no meetings could be held to which the plaintiffs might appeal from the entries of the secretary, which are declared by the by-laws to be *primâ facie* evidence, nor for the election or removal of officers to whom the plaintiffs must apply for the redemption of their land from the mortgage, nor for any other corporate object or purpose. Articles 1, 3, 12, 18, 30, 31.

The liability to pay monthly dues, or fines, or interest on the amount advanced, cannot extend beyond the existence of the association. This was assumed in the opinion delivered by Mr. Justice Hoar in *Bowker* v. *Mill River Loan Fund Association*, 7 Allen, 100, and is the necessary effect of the contract between the parties. The transactions of November 30, 1866, amounted to a complete suspension, at least, if not to a final dissolution, of the corporation, by the unanimous consent of all the members. Angell & Ames on Corp. §§ 768–770. It would be most inequitable to oblige one party, or those holding by assignment his interest, to continue to make the payments required of him by the contract, while the other party has incapacitated himself from carrying out the provisions made in the same contract for ascertaining the extent of the mutual obligations of the parties, and for securing the performance thereof on his own part.

The result is, that the plaintiffs, upon paying the amount due on November 30, 1866, with interest thereon, are entitled to a

*Decree for redemption.*