ROBERT A. WEIR v. THE GRANITE STATE PROVIDENT ASSN.

1. When a building and loan association is put into the hands of a receiver because of its insolvency, the mortgages held by the association become due at once, and the receiver can foreclose and the mortgagee can redeem.

2. In computing the amount then due upon a mortgage, the borrower should receive credit for all his payments of interest or premium but not on dues.

3. When all the premium was deducted when the loan was made, the borrower should be charged with the amount of money actually paid to him, with interest thereon, and credited with all interest paid by him, including interest paid upon the premium.

4. When the premium was not deducted when the loan was made, but was paid in subsequent installments, he should be charged with the amount received and interest and credited with interest and premiums paid, including interest on the installments of premium from the time of their payment.

This bill is filed by a mortgagor to redeem his real estate from the encumbrance of a mortgage. The cause is heard on bills and answers and replication. The mortgage was given to the defendant, a building and loan association of the State of New Hampshire, which has become insolvent, and whose affairs have gone into the hands of a receiver.

The mortgagor is the holder of ten shares of stock of the insolvent company, nine of which shares were assigned to the company as collateral security. Those shares were not matured at the time of the company's insolvency.

The questions involved are, first, whether the complainant is entitled to redeem; second, if so, what sum is he obliged to pay to effect such redemption.

The scope of the business which the corporation transacted, and the methods of its transaction, are set out in the pleadings.

Subscribers for shares agreed to pay $1 each month on account of shares, the par value of which was $200. This $1 a month is called dues, and the money so paid was separated into two parts—one part was used to defray operating expenses of the association and the other part was put into a loan fund for investment among members.

If any member wished to borrow money from the association it was loaned to him on bond and mortgage, and he then agreed to pay, in addition to the regular subscription payments upon his shares and interest on such loan, also an additional premium, which premium and interest went into the loan fund. The loan fund was held in trust for all shareholders. When the accumulation of the loan fund was such an amount that the proportion belonging to any shareholder equaled the par value of his shares, less the loan that had been made to him, his shares were canceled.

There was also a plan by which the association assumed the payment of any mortgage on the property of the shareholder, and in that case the shareholder, in addition to paying the interest on the loan, also paid to the association the interest on this mortgage, and also premiums in proportion to the amount of the mortgage, and the association agreed to pay the said mortgage out of the share of the loan fund belonging to the share-

holder, when said share should equal the amount of the said mortgage.

The particular transaction is thus stated in the pleadings: On January 11th, 1890, one Charles C. Jewell, with his wife, made a mortgage upon their property to Flemming & Lewis, trustees, to secure the sum of $1,080. Jewell and wife, on January 17th, 1890, subscribed for ten shares of stock in the Granite State Provident Association, and at the same time made a second mortgage to the association, consideration for which second mortgage was stated to be the sum of $400 (it was in fact $360) paid by the association to the mortgagor, and further that the association agreed to pay off the Flemming & Lewis mortgage. The condition of this mortgage was that if the mortgagor should pay to the association $2 per month, and monthly in advance, on each of the nine shares of stock owned by the mortgagor, as provided for by the terms, rules and by-laws of the association, until the series of which the nine shares are a part shall be worth $200 per share, when the mortgage and shares are to become canceled, then the instrument to be void.

Jewell assigned the nine shares of stock to the association as security for the loan.

On May 12th, 1891, the Jewells conveyed the mortgaged property to one Peter Abstein, who, on May 12th, 1896, conveyed the same to the complainant.

On March 14th, 1892, David Taggert was appointed assignee of the association in New Hampshire for the benefit of its creditors, and subsequently George R. Gray was appointed receiver in this state.

The bill charges that on March 12th, 1896, the complainant tendered to the receiver the amount actually loaned on the said mortgage, with all arrears of interest then due, less the premiums paid on the said mortgage, and that the receiver refused to receive less than the full amount of the mortgage, with interest.

It appears that the association has paid interest upon the Flemming & Lewis mortgage up to January 11th, 1896.

From the amended bill and the answer of George R. Gray, receiver, it appears that the amount borrowed by the mortgagor,

in cash, was $720, which, with the first mortgage of $1,080, which the company covenanted to pay, made up the matured value of the nine shares assigned to the association as collateral security. The company deducted twenty per cent. of the $1,800 as gross premiums, amounting to $360. This sum was deducted from the cash loan of $720, leaving $360 as the amount of cash actually received by the mortgagor.

Of the payment of $2 a month on each share required by the condition of the mortgage, the payment of $1 a month seems to be referable to the six per cent. interest on the whole sum of $1,800, which sum would amount to $108, and which sum was the amount paid each year upon the nine shares of stock.

The payment actually made by the mortgagor up to the time of insolvency, seems to have been altogether $1,433, of which $657 was paid on account of interest and $770 on account of dues and $6 on account of a fine.

Of the $770 paid for dues, $180, under the rules of the company, is applicable to the expense account in running the business, thus leaving $590 of dues paid in to be applied to the value of the shares.

To the bill for redemption the corporation, Mr. Taggert, the New Hampshire assignee, and Mr. Gray, the New Jersey receiver, are made parties.

*Messrs. Duffield & Kinney,* for the complainant.

*Mr. Cortlandt Parker,* for Taggert, assignee.

*Mr. Howard W. Hayes,* for George R. Gray, receiver.

REED, V. C.

It seems to be entirely settled that upon the insolvency of a corporation of this class, its receiver is at once empowered to collect the amount loaned to any borrower by the association, and that he can, for that purpose, proceed to foreclose a mortgage held by such association, although there had been no default

by the mortgagor in the payment of any installment of interest or dues previous to the insolvency of the company.

The collapse of the scheme renders it impossible to carry out the object of the association. The debtor cannot pay according to the terms of his contract with the association. The necessity of winding up the affairs of the insolvent company involves the right to immediately collect its assets and distribute the fund to its stockholders and creditors. *End. Build. Asso.* ¶ *523; Cook* v. *Kent, 105 Mass. 246; Curtis* v. *Granite State Provident Association, 69 Conn. 6; Rodgers* v. *Hargo, 92 Tenn. 35.*

If the debts of the borrower become due by the fact of insolvency, it must follow that if those debts are secured by a mortgage which can be foreclosed, then from the fact of insolvency the right of the mortgagor to redeem his property from the encumbrance of such mortgage must accrue. Until the mortgage debt is due there can be no redemption. *Brown* v. *Cole, 14 Sim. 426; Kingman* v. *Pierce, 17 Mass. 247; Abbe* v. *Goodwin, 7 Conn. 377; Moore* v. *Cord, 14 Wis. 213.* But the moment the debt matures, anyone interested in the land is entitled to discharge the property from the encumbrance. Indeed, the right to foreclose and the right to redeem may be said to be reciprocal. I am therefore of the opinion that the mortgagor need not await the foreclosure proceedings of the receiver, but can now pay off the amount which could be recovered against him by a sale of his property.

The important question is to determine the theory upon which this amount is to be calculated.

As already stated, the condition of the mortgage was not that the mortgagor should pay a single sum, but that he should pay $18 a month until his shares were worth $1,800. Eighteen hundred dollars was an aggregate sum made up of the first mortgage assumed by the association together with the $360 in cash loaned and $320 of premium charged and retained. One-half of the monthly payments which had been made by the mortgagor, although lumped with the dues, was obviously paid as interest on the sum of $1,800, which sum was composed of the items just mentioned.

Weir v. Granite State Provident Association.

The complainant insists upon his right to redeem by calculating his liability upon the following theory : He is to be charged with the cash actually received by him, with interest upon it up to the date of the insolvency of the company ; he is to be allowed for all payments made by him.

To entitle the mortgagor to redeem, he must pay the same amount that could be recovered by the mortgagee by foreclosure. The question then is what sum could be collected from Weir?

If there were no condition of insolvency—if the company was still a going concern—nothing could now be collected, for the mortgagor would not be in default in any payment required by the condition of his mortgage. And if he had been in default and the company solvent, the rule for computing the amount recoverable would be this : Calculate the length of time which would be required to mature the series of which the mortgagor's shares are a part and charge him with all the dues and interest he would still have to pay up to the end of this period. *Hoboken Building Association* v. *Martin, 2 Beas. 427, 433.*

But upon the occurrence of insolvency, with its consequential winding up of the affairs of the company, the application of this rule becomes inequitable.

The shares can never mature. The object to be attained by future payment of dues can never be accomplished. The mortgagor is discharged from his duty to further pay. Therefore, in arriving at the amount which the insolvent company or its receiver can recover, his non-liability to make such payment must be assumed.

As the scheme under which the loan or advancement was made and the mortgages were given and the dues and interest were paid has collapsed, the problem is to establish a rule which will operate equitably between all classes of shareholders under these new conditions.

First, then, with what should he be charged ?

Inasmuch as he is relieved from paying, according to the terms of his mortgage, and is remitted to the position of an ordinary borrower whose debt is due, his liability is to be limited to the amount which he actually received, with legal interest

thereon. This course seems to be the rational one and is supported by all the cases. *4 Encycl. L. (2d ed.) 1081.*

With what is he to be credited? He paid $9 a month as dues; he also paid $9 a month as interest. There was also deducted from the gross amount loaned, namely, $720, a premium of $360.

As to the interest. If he is charged with interest upon the amount he has received, he should be credited with the interest he has paid, for it is apparent that the interest should be charged on both sides or neither side of the account.

Next, in regard to the premiums paid. This is a sum paid for the right to borrow the assets of the association, usually in preference to some other shareholder. Premiums are paid in two ways—in some associations an amount is paid each month as a bonus for the privilege of borrowing, and in other associations, as in this, a gross sum is deducted from the entire amount bought out, and the remainder only is paid to the borrower.

In whatever way the credit is allowed, it is generally admitted that when an association is prematurely wound up by reason of insolvency, the borrower is entitled to a credit of the premium paid or deducted. Now, it is true that all the shareholders, both borrowers and investors, would share in the increment arising from the payment of bonus and interest thereon by the borrowers, if the scheme was carried out; and it is true that, by crediting the premiums paid by each borrower upon his loan, the investing members lose all benefits from such premiums. The principle, however, upon which the latter class of shareholders are excluded from those benefits is, that the premiums were paid by the borrowers in consideration of the complete execution of their contracts, which would permit the borrower to pay his debt by the application of his matured shares. If the existence of the company is prematurely terminated, and so the borrower is prevented from liquidating his debt by applying his shares when matured, and is prevented, as well, from receiving their withdrawal value, then the consideration for his payment of premiums, fails. The borrower does not receive the benefit for which he has bargained. Under these conditions the non-borrowers, having paid no premiums, cannot share in those paid

Weir v. Granite State Provident Association.

by the borrowing class.   Not only are the premiums deductible, but when they are retained at the time of the making of the loan, and the borrower has paid interest upon the gross sum borrowed, including the premiums, then that part of the interest subsequently paid upon the premium, or, in other words, the interest paid in excess of the amount due upon the sum actually loaned, must be deducted.   The cases supporting the deduction of both premiums and interest are: *Brownlie* v. *Russell, L. R. 8 App. Cas. 235; City Loan Association* v. *Goodrich, 48 Ga. 445; Waverly Mutual Building Association* v. *Buck, 64 Md. 338; Cook* v. *Kent, 105 Mass. 246.*

While the deduction of all moneys paid as premiums is probably the most equitable that can be adopted, yet it is to be remarked that it may, unless the power to appoint a receiver is employed with caution, work to the injury of the non-borrowing or investing class of shareholders.   Instances may occur where the members of this class, by their investment in an association, have acquired the right to have the value of their shares of stock arising from the application of the high rate of interest, which the system of premiums is intended to secure, impaired by the premature winding up of the association.   They should not be deprived of their right as shareholders, unless the condition of affairs calls emphatically for the dissolution of the association as an act of justice to all concerned.   If, after the value of the shares of all the series has approached par, the company is thrown into bankruptcy, the one class is stripped of this part of the withdrawal value of its shares, while the other class receives all the benefit, by the application of this value to the payment of its loans.

The risk of losses by mismanagement is inherent in the character of the scheme, and while such losses may protract the life of the series, they do not prove insolvency.   A case of such rottenness in the affairs of the association should appear as to render it in the highest degree improbable that the shareholders, in the face of the discouraging condition of affairs, will continue to pay dues and so bring the series to maturity.

In connection with this observation it may be remarked that

there is much to be said in favor of the rule laid down in the case of *Towle* v. *American Building Association, 61 Fed. Rep. 446,* in dealing with premiums in insolvent cases. The rule announced in that case was that the borrowing member had the right to be credited only with the unearned portion of his premium, that is, the proportion which a withdrawing member would be entitled to. I will, however, adopt the rule sustained by the great weight of authority and by the supreme court of New Hampshire, in advising Mr. Taggert in this matter, viz., that only the sum actually received by the complainant is to be charged against the borrower, which, as already remarked, amounts to actually the same thing as crediting him with the premium paid. He is also to be credited with that part of the interest paid on account of the amount so deducted.

The last question is whether he should be credited with all or any part of the dues paid by him.

It has been held by some highly-respectable courts, that a mortgagor, when an association of this kind is prematurely wound up, is entitled to a credit for all the dues which he has paid. Other courts have held that he is not entitled to credit on the mortgage on account of dues paid, and that he must await the final distribution of the assets of the association and then take what his shares are proved to be worth.

The rule supported by the last class of cases, in my judgment, produces a more equitable—indeed, the only equitable— result. The payment of dues stands upon an entirely different footing from the payment of premiums. The latter are paid by shareholders, it is true, but not as shareholders, but as borrowing shareholders. It is paid as a part of his contract with the association, of which the mortgage is a part, and it can be said that when the association fails to perform, then the debtor is relieved from paying what he agreed to pay in consideration of performance.

But dues are paid by all the members alike. If, by maladministration of the affairs of the association, the fund is diminished, the losses should fall evenly upon all. The accuracy of

this proposition seems to be too obvious for discussion.   Now, if a borrowing member is permitted to set off all the money he has paid as dues, it is perceived that he receives the value of his shares so far as that value is the result of dues, while the non-borrowing members are compelled to bear all the losses.

The accuracy of this proposition seems, also, to be equally manifest.

Now, what is equitable is that each member shall receive his proportionate share of the assets which represents the remainder of dues accumulated.  Inasmuch as this amount cannot be determined until the coming in of the final account of the receiver, and inasmuch as the amount due upon the mortgage must be settled at once, there can be no credit upon the mortgage debt on account of this at present indeterminate amount.  As to it, the mortgagor must await the period of final distribution.

The non-applicability as an offset of the dues paid by the borrower is held in the following cases: *Strohen* v. *Franklin Savings Fund, 115 Pa. St. 273; Rogers* v. *Hargo, 92 Tenn. 35; Curtis* v. *Granite State Provident Association, 69 Conn. 6; Connecticut Bank Commissioner* v. *Granite State Provident Association (unreported, New Hampshire).*

The last case embodies the instructions given by the supreme court of New Hampshire to Mr. Taggert concerning the affairs of this corporation.  The result in detail is therefore this : The complainant is to be charged with $360, with interest, and to be allowed the interest paid, including the portion of the interest paid on account of the premium as an overpayment.  Interest should also be allowed upon the overpayment from the date of each payment.