CARPENTER v. RICHARDSON.

(*Jackson.*    June 1, 1898.)

1. BUILDING AND LOAN ASSOCIATIONS. *Method of adjustment between insolvent association and borrower.*

In a suit by the receiver of an insolvent building and loan association against its borrowing member, who had defaulted before the association became insolvent, to ascertain amount due and to foreclose the mortgage, the complainant is entitled to recover the amount loaned, with interest from date of loan, and unpaid premiums (but not fines), subject to credit for all cash amounts paid on interest, premiums, etc., with interest thereon. (*Post, pp. 177, 178.*)

Cases cited and approved: Rogers v. Hargo, 92 Tenn., 35; Post v. Building & Loan Association, 97 Tenn., 408.

2. SAME. *Borrowing member not entitled to credit for stock left with association, when.*

A member is not entitled to credit for value of stock left with a building and loan association as a premium upon his loan, in a suit prosecuted by a receiver of the association, after its insolvency, to foreclose the mortgage executed to secure the loan. (*Post, p. 179.*)

3. SAME. *Interest allowed against member after insolvency of association.*

In the absence of a proper tender by the borrowing member, a building and loan association can recover interest against him in a foreclosure suit, even if it accrued after the association's insolvency. (*Post, pp. 179, 180.*)

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. STERLING PIERSON, Ch.

F. H. HEISKELL and TEMPLETON & CATES for Carpenter.

C. W. HEISKELL for Richardson.

WILKES, J. This is a bill to foreclose a mortgage made to a building and loan association, and to determine the amount of the mortgage debt. The association is insolvent, and the bill is filed by its receivers. The principal contest in this Court is over the amount of the debt and the basis on which it is to be determined and fixed. The Chancellor gave a decree for $450 and some interest and premium installments, amounting in all to $478, and ordered the mortgaged premises sold unless that sum was paid in thirty days. The association has appealed.

It appears that the particular scheme of this association was that the borrower should subscribe for $900 of stock, and execute notes, with mortgage, for that sum. Of this, however, she was to have the benefit of only $450 for herself, the other $450 being given to the association as a premium for a loan of $450. The borrower was to pay interest upon the $450 borrowed, and fines, dues, etc., on the $900 of stock, and the note was to be paid by maturing the whole stock. There was a demurrer filed in the cause. Six of the grounds of demurrer were to the effect that the scheme was illegal for want of competitive biddings. These grounds were

17 P—12

overruled, and from this part of the decree there was no appeal.

The seventh ground of demurrer was sustained, and the result was to determine that, in adjusting the amounts due from the borrowers, they should be charged with the sum actually received, and legal interest from the date the money was borrowed, July 25, 1895, and credited with the amount of premium and interest paid. The amount of premium paid is shown by the letter of the receivers to be $18.90, including interest. It seems that this amount is, or at least is treated, as cash dues paid on the $450 premium stock, which was to be matured for the company. It is insisted that it was error to simply charge the borrower with six per cent. interest on the amount actually received, and give her credit for premiums and interest paid, and interest thereon, inasmuch as the borrower was delinquent before the association became insolvent; also that it was error to allow credit for the dues paid on premium stock; and that it was error not to give a decree for fines imposed, in addition to the loan and interest.

The basis adopted by the Chancellor to fix the debt of the mortgagee in this case conforms, as near as may be, to the rule heretofore laid down by this Court, and is as near correct as the ever changing schemes of these companies will permit. *Rogers* v. *Hargo*, 8 Pickle, 35; *Post* v. *Association*, 13 Pickle, 408. What may be the rights of this, or any other stockholder, on the final adjustment of the affairs of

the association, in a case where all parties are before the Court, and all equities are to be adjusted, can only be determined at that time.

The premium in this case consists of the stock which the borrower was to mature for the benefit of the company, and such cash amounts as she was required to pay upon that stock in the way of dues, fines, etc. For this latter sum she is allowed credit by the Chancellor, the company stock remaining in the control of the company to await the final adjustment, but with no obligation on the borrower to make any further payments on it.

The borrower in this case insists she should have credit for the value of her stock upon her loan. But it is manifest the value of the stock cannot be ascertained, even approximately, until the affairs of the association are so far wound up as to furnish some basis or assurance of what may be left for the stockholders on final settlement. This will make a hardship upon borrowers, but it is unavoidable except so far as the Courts winding up the association may see their way clear, from time to time, to declare stock dividends, in which events the amounts declared in favor of a borrower might be credited upon his debt.

It is claimed that no interest should be allowed after insolvency, and especially in the present case, when the association was demanding, by settlement, more than it was entitled to. But the proper remedy for the borrower in such case was to tender

the amount due on a proper settlement, and stand upon the tender.

The decree of the Chancellor is affirmed, with costs, and the cause remanded for the execution of the decree of sale from the Court below, after such limit of time as that Court may direct, within which the amount due may be paid off.