M. C. CLARK, Receiver, Etc., Respondent, v. JOHN LOPP et al., Appellants.

St. Louis Court of Appeals, May 16, 1899.

1. **Building and Loan Association:** RECEIVER: STOCKHOLDER. If a borrowing stockholder in an association like the one at bar was allowed to recoup his indebtedness when sought to be enforced in the administration of the affairs of the insolvent corporation by the amount of his payment on shares of stock issued to him he would derive an unjust advantage over the nonborrowing stockholders, which equity can not permit. Held, that the trial court did not err in excluding from consideration the amount paid by defendant on his stock certificate and confining the credit given to him to the aggregate amounts of his interest payments on the loan.

2. ———: ———: ———. When defendant became a member of the corporation he took the risk of its nonfulfillment of its obligations on account of insolvency and the consequent equitable enforcement of his obligations to the corporation for the benefit of its creditors, and the *pro rata* equality of its shareholders.

3. ——: ——: ——: FOREIGN CORPORATION: WAIVER. In the case at bar the title of plaintiff as a foreign corporation was fully and explicitly set forth in its petition; as this question was not raised by special demurrer, it was waived.

*Appeal from the Barry Circuit Court.*—HON. J. C. LAMSON, Judge.

AFFIRMED.

T. D. STEELE for respondent.

Upon the insolvency of the association and the appointment of a receiver the mortgages became immediately due and payable. Such insolvency works a rescission of the contract between the association and its members who have secured advancement upon their shares of stock, for the reason that such contract was dependent entirely upon the stock maturing and attaining its ultimate or par value. The money therefore advanced to the borrowing member, immediately, upon such insolvency, becomes due and payable. A court of equity has sequestrated all of the assets of this corporation, it has undertaken to administer them so as to do equity and justice to all interested. This, it would seem clear, can only be done by collecting in the amounts advanced to the stockholders as speedily as possible and distributing the avails thereof to those entitled to them. Strauss v. Ass'n, 23 S. E. Rep. 420; Brust v. Fitzsimmons, 21 S. E. Rep. 614; Curtiss v. Granite B. & L. Ass'n, 36 Atl. Rep. 1024. The main question as contended for in the trial of this case was whether the payments of dues upon the stock should work an extinguishment or be applied as payments on the mortgage. We take it as well settled in this state, and the rule seems to be general, that borrowing members of an insolvent building association must participate alike with the investing members in bearing the burden of the losses the association has sustained. Such borrowing members are therefore liable for the amount of the

loan actually received, with interest thereon, and will receive their proportionate share of the assets of the association when the same are distributed. Endlich on Building Ass'n [2 Ed.], sec. 477; Brown v. Archer, 62 Mo. App. 291; Strohen v. Franklin Loan Ass'n, 115 Pa. St. 273; Rogers v. Hargo, 92 Tenn. 35; 20 S. W. Rep. 430; Callahan's Appeal, 124 Pa. St. 138. The fact of plaintiff being a foreign receiver, and the capacity to sue being fully set out in the petition, and defendants failing to interpose a special demurrer, and no objection or exception whatever being taken to the petition which upon its face showed the character in which plaintiff sued, that objection was completely waived by not filing a special demurrer. R. S. 1889, sec. 2047; Gregory v. McCormick, 120 Mo. loc. cit. 663; Clark v. Hughes, 73 Mo. App. loc. cit. 634, 635.

A. V. DARROCH and CLOUD & DAVIS for appellants.

The transaction being mutual the obligation of the defendant dependent upon the obligations of the association defendant's objections could not be assigned. If the obligations of defendant could be assigned it could only be assigned to one who assumed the obligations of the association in said contract. The plaintiff in this case does not assume or pretend to assume any such obligation, but on the contrary assumes to be acting in the interest of the stockholders within the state of Wisconsin only. In all the cases holding to the doctrine invoked by plaintiff the theory has been that the borrowing stockholder should pay his money into the general fund in the hands of the general receiver who would again distribute the same among the shareholders *pro rata* thus protecting the nonborrowing stockholders against losses arising from the loans made on poor security. Towle v. Am. Building, Loan Ass'n, 60 Fed. Rep. 131; Strahen v. Franklin Savings Fund, 115 Pa. 273; Security Loan Ass'n v. Lake, 69 Ala. 456; Knutson v.

Northwestern, etc., 69 N. W. Rep. 889; Strauss v. Carolina Intestate B. & L. Ass'n, 30 L. R. A. 694. The receiver can not bring an action in a foreign court but the action must be brought in the name of the original creditor.

BOND, J.—The petition in this case is to wit: "The above named plaintiff, complaining of the defendants, respectfully shows to the court: That the above named American Building and Loan Association organized, and was incorporated as a mutual building and loan association in April, 1887, under and by virtue of the laws of the state of Minnesota, and having its office and principal place of business in the city of Minneapolis in said state; that on the 26th day of July, 1892, its corporate name was duly altered to American Savings and Loan Association without changing, altering or effecting any of its rights, privileges or liabilities; that the said association carried on general business of a building and loan association from the date of its incorporation until the 14th day of January, 1896; that the general nature of the business of said association was, and article two of the articles of said association provided and declared that the general nature of its business should be, 'to assist its members in saving and investing money and in buying and improving real estate, and procuring money for other purposes, by loaning or advancing, under the mutual building society plan, to such of them as may desire to anticipate the ultimate value of their shares, funds accumulated from the monthly contribution of its stockholders, and also such other funds as may from time to time come into its hands.' That prior to the 14th day of January, 1896, the said association, and its officers, has been guilty of certain violations of law, and the said association had become insolvent and unable to perform its contracts, or to mature its stock, or to carry out the purpose for which it was created, and William D. Hale was, on said day by the district court of Hennepin county, Minnesota, duly appointed temporary receiver of

said association in an action then pending in said court, wherein the state of Minnesota ex rel. H. W. Childs, attorney-general of the state of Minnesota was plaintiff, and said association was defendant. That said appointment was made upon the petition of said William D. Hale and the *ex parte* application of said attorney-general. That afterwards said case was duly heard in said district court and the supreme court of the state of Minnesota upon appeal thereto duly taken by the defendant in said action. That as a result of said hearing and appeal, it was duly determined by said court that said association had been guilty of certain violations of law and was insolvent and unable to perform the purpose for which it was created, and on the 18th day of June, 1896, the said William D. Hale was duly appointed by said district court permanent receiver of said association. That the said William D. Hale qualified as such receiver and ever since the 18th day of June, has been and now is acting as such. That in the year 1889, in order to engage in and do business in the state of Wisconsin, under the laws thereof the said association deposited with the state treasurer of Wisconsin, in accordance with the provisions of section 2014a and 2014b of Sanborn & Berryman's annotated statutes of Wisconsin, amended by chapter 469 of the Laws of Wisconsin for the year 1891 in trust for the benefit and security of all its members in the said state of Wisconsin, securities of the value of one hundred thousand dollars ($100,000), and that thereafter and for the purpose of keeping said deposit good, as required by the laws of Wisconsin, on or about the 7th day of October, A. D. 1895, the said association duly deposited with the state treasurer of Wisconsin the bond and mortgage of defendant John Lopp and Mary F. Lopp hereinafter fully described and set forth; that in February, 1896, the said association having become insolvent, such proceedings were had in the circuit court for Dane county, Wisconsin, in an action therein pending, wherein L. V. Lewis was plaintiff, and the American Savings and Loan Association,

PETITION.

formerly doing business under the name of the American Building and Loan Association, and S. A. Peterson, as treasurer of the state of Wisconsin, were defendants, that this plaintiff, M. C. Clark, on the 6th day of February, 1896, was by said court duly appointed receiver of said association in the state of Wisconsin and receiver of the securities deposited by said association with said state treasurer, and among which securities were the bond and mortgage hereinafter described; that the said M. C. Clark duly qualified as such receiver and since has been and now is such receiver; that all the securities held by the state treasurer were by him turned over to this plaintiff as such receiver in obedience to the order of the court, among them being the said bond and mortgage of defendants John Lopp and Mary F. Lopp, and that this plaintiff is now the lawful owner and holder of the said bond and mortgage.

"Plaintiff further states that on or about the 5th day of September, 1888, the defendant John Lopp, made his application in writing to said association for membership therein and subscribed for and became the owner of 34 shares of its capital stock of the par value of one hundred dollars ($100) per share; that on the 5th day of September, 1888, the said association issued and delivered to the said John Lopp, its certificate for 34 shares of stock, numbered 6728, and dated on said date, which said certificate was issued to and accepted by the said John Lopp, upon the terms and conditions therein set forth, and subject to the provisions of the by-laws of said association, a copy of which said certificate is hereunto annexed marked Exhibit "A." and made a part thereof; that by the terms of said certificate of stock and the provisions of the by-laws of said association, in force at the time said certificate was issued, the said John Lopp agreed and was obligated to pay to said association at its home office in Minneapolis, Minnesota, during each and every month from and after the date of said certificate, the sum of sixty cents per share as and for the monthly

dues upon said stock until the same become matured and of the actual value of one hundred dollars ($100) per share; that a copy of said by-laws is hereunto annexed marked Exhibit "B." and made a part thereof; that on or about the 6th day of February, A. D. 1889, the said John Lopp, duly made application to the said association in writing for a loan or advancement of one thousand seven hundred dollars, by way of anticipation of the value of said shares of stock at their maturity, and in accordance with the law of the state of Minnesota, and the by-laws of the said association, bid the sum of fifty dollars per share or one thousand seven hundred dollars as and for the privilege of obtaining such advancement, which said application and bid were duly accepted and approved by the board of directors of said association, and the amount applied for as aforesaid, to wit, the sum of one thousand seven hundred dollars, was duly paid by it to the said John Lopp. That on or about the 8th day of February, 1889, in order to secure the payment of said loan, and in order to secure the payment of interest on said advancement or loan of seventeen hundred dollars, at the rate of six per cent per annum, payable monthly, and of the said monthly dues on said 34 shares of stock, until said stock should be matured and of the value of one hundred dollars per share, the said John Lopp and Mary F. Lopp, his wife for and in consideration of the advancement aforesaid, made, executed and delivered to said association at the home office in the city of Minneapolis, their certain bond in writing (a copy of which is hereunto annexed marked Exhibit "C." and made a part thereof) whereby they acknowledged themselves firmly bound unto the said association in the sum of three thousand four hundred dollars, being the amount of said advancement and premium bid; that it was covenanted and agreed in said bond that if the said John Lopp and Mary F. Lopp, should pay or cause to be paid to said association, at its home office in the city of Minneapolis, Minnesota, on or before nine years from date thereof, the said sum of three thousand

four hundred dollars, being the amount of said advancement and premium bid therefor, together with interest thereon at the rate of six per cent per annum, payable monthly, or if they should pay or cause to be paid to the said association at its home office as aforesaid, the sum of twenty dollars and forty cents on the 5th day of each and every month as and for monthly dues on said shares of stock, and should pay all instalments of interest aforesaid, and all fees which should be charged against said stock until said stock should become fully matured and of the value of one hundred dollars per share, then the bond should become null and void, but otherwise to remain in full force and effect. That on or about the 8th day of February, 1889, the said John Lopp and Mary F. Lopp, for and in consideration of the advancement aforesaid, made, executed and delivered to said association at its home office in the said city of Minneapolis, Minnesota, their certain mortgage deed in writing (a copy of which is hereunto annexed and marked Exhibit "D." and made a part thereof), which said mortgage deed was made and executed with reference to, and under the laws of the state of Minnesota, whereby they did grant, bargain, sell, convey and confirm unto said association its successors and assigns, the following described real estate lying and being in the county of Barry and state of Missouri, to wit: Lot number (12) of block number thirty-two (32) in the Monett Town Company's town site of Monett, county of Barry, and state of Missouri. That the said John Lopp and Mary F. Lopp, did in and by said mortgage covenant and agree that they would pay the sum of one hundred and fifty dollars, attorney's fees, in case of the foreclosure of the said mortgage; that said mortgage and conveyance were to become void only on the faithful performance of the terms. and conditions of the said bond and mortgage, which said mortgage was duly acknowledged so as to entitle it to be recorded, and was duly recorded in the office of the recorder

of deeds in the county of Barry, in the state of Missouri, on the 5th day of March, 1889, in Book "N," of Mortgages at page 269. That there has been paid by the said defendant John Lopp as dues upon said shares of stock, the aggregate sum of one thousand six hundred and thirty-two dollars, which said amount paid said dues up to and for the month of June, 1895; that upon the sum of one thousand seven hundred dollars advanced to said defendant John Lopp, as aforesaid, there has been paid as interest due on said sum up to and for the month of June, 1895, amounting in the aggregate to the sum of six hundred and forty-six dollars.

"Plaintiff further states that said association was a mutual building and loan association or building society; that the said John Lopp was a member thereof, and as such subject to the provisions of law regulating the winding up of the affairs of such associations when insolvent; that by procuring the advancement or loan as herein before set out the said John Lopp acquired no rights or immunities other than those had by members of said association who had not secured loans or advancements on their shares of stock; that said association at the time of the appointment of the said William D. Hale as receiver, and of this plaintiff as receiver, had stockholders in thirty-five different states, held mortgages upon real estate in twenty-nine states, and owned real estate in nineteen states; that a large number of the members or stockholders of said association had never procured or had loans or advancements of any kind whatsoever upon shares of stock held by them; that on the 18th day of June, 1896, the said William D. Hale as receiver, did enter into the possession of and take charge of all the property and affairs of said association, except the securities deposited by said association with the state treasurer of Wisconsin, and now held by this plaintiff as receiver, and the said William D. Hale as receiver; ever since has had the same in his charge and custody and under his management and administration as receiver. That upon the insolvency of said

association and the appointment of the receiver thereof as hereinbefore stated, the contract between said association and the said John Lopp and Mary F. Lopp, evidenced by said bond and mortgage, became and was abrogated and rescinded and the actual amount loaned as aforesaid by said association, to wit, the sum of one thousand seven hundred dollars, became presently due and payable and the said bond and mortgage are security therefor; that no part of the said sum of one thousand seven hundred dollars, secured by said mortgage, has been paid except the money paid to said association as interest thereon, being full payment thereof up to the 5th day of June, 1895, amounting in all to the sum of six hundred and forty-six dollars, and there is now due and payable to this plaintiff, as receiver, the sum of one thousand seven hundred dollars, with interest thereon at the rate of seven per cent per annum from the date of said mortgage, less the said sum of six hundred and forty-six dollars, paid as interest on said loan with interest from the several dates of payment thereof at the rate of seven per cent per annum. That the legal rate of interest in the state of Minnesota is at the rate of seven per cent per annum.

"Plaintiff further states that no proceedings have been had at law or otherwise for the recovery of the sum secured by said bond and mortgage of any part thereof and that no part thereof has been paid or collected except the amount of interest hereinbefore stated.

"Wherefore plaintiff demands judgment against said defendants for the said sum of one thousand seven hundred dollars together with interest and costs and the sum of one hundred and fifty dollars, as and for attorney's fees; that said defendants and all the persons claiming under them, or any or either of them, subsequent to the date of said mortgage, be barred and foreclosed of all right, claim-lien and equity of redemption in the said mortgaged premises; that the said

premises be adjudged and ordered to be sold by the proper officer of this court and out of the proceeds of such sale pay the costs and expenses of this suit and the balance on the debt herein sued on; and that the defendants be enjoined from committing waste on said premises or doing any other act that may impair the value of the same, and that the plaintiff may have judgment and execution for any deficiency remaining unpaid after applying the proceeds of such sale upon such judgment in due form of law against the said defendants who are each personally liable for the debt secured by said mortgage and that plaintiff have such other or further judgment order or relief as is provided by law in such cases and as may be just and equitable by reason of the premises."

The answer admitted the membership of defendants in the association of which plaintiff is receiver, and also the reception of the loan charged in the petition and the execution by defendants of the mortgage referred to therein. The answer further set up the payments made by defendant John Lopp for his dues on the certificate of stock issued to him and as interest on the sum borrowed, and claimed the aggregate of these as a credit on the loan. There was a decree for plaintiff, from which defendants appealed.

The evidence adduced on the trial sustained all the allegations of the foregoing petition.

We can not agree that the insolvency of the association entitled the defendant John Lopp to set off both the payments made on account of his shares of stock and the payments of interest upon the sum loaned to him, as a credit on the latter. This has been decided the other way by the Kansas City Court of Appeals. Brown v. Archer, 62 Mo. App. loc. cit. 291. The ruling in this case was put upon the ground that a borrowing stockholder in an association like the present if allowed to recoup his indebtedness, when sought to be enforced in the administration of the affairs of the insolvent corporation, by

Clark v. Lopp.

amount of his payment on shares of stock issued

EQUITY.        to him, would derive an unjust advantage over

the nonborrowing stockholders, which equity could not permit. We concur both in the ruling and the reason given therefore by our learned brethren in the case cited, hence we hold that the trial court did not err in excluding from consideration the amount paid by defendant on his stock certificate and confining the credit given to him to the aggregate amounts of his interest payments on the loan.

Neither can we assent to the other position taken in appellant's brief, that the obligations between defendant and the association of which he was a member, were not assignable to the representative of the association appointed in proceedings in equity to administer its affairs as an insolvent corporation for the benefit of its creditors and stockholders. When defendant became a member of the corporation he took the risk of its nonfulfillment of its obligations on account of insolvency and the consequent equitable enforcement of his obligations to the corporation for the benefit of its creditors and the *pro rata* equality of its shareholders. He is, therefore, in no position to complain that such an outcome to his contract with the association has happened.

It is finally insisted by appellant that plaintiff being a foreign receiver can not maintain this action. The general rule is, that a foreign receiver merely as such can not sue in this state. The rule, however, has been much modified by comity and such suits are often permitted when they do not contravene the law or policy of this state and are brought to recover specific property without prejudice to the rights of resident creditors. Robertson v. Stead, 135 Mo. 135; Waters-Pierce Oil Co. v. Bell, 71 Mo. App. loc. cit. 656. But the appellants having failed to raise the question of the suable capacity of the plaintiff in the trial court can not urge it for the first time on appeal. In the case at bar the title of plaintiff as a foreign corporation was fully and explicitly set forth

in its petition. If defendants intended to question his right as such to maintain this action, they should have done so by a special demurrer. As that course was not taken, any future objection to the character WAIVER. in which plaintiff sued was completely waived. R. S. 1889, sec. 2047; Gregory v. McCormick, 120 Mo. 663; Clark v. Hughes, 73 Mo. App. loc. cit. 634, 635.

There appears to be a clerical error in the recitation of the amount of the judgment in the record entry; instead of $2,050, the aggregate of the judgment is shown by the sums allowed to have been $1,950, for which amount it is accordingly affirmed. All concur.