## Frank E. Dooling, Receiver, etc., v. Lois A. Smith et al.

1. BUILDING AND LOAN ASSOCIATIONS—*Borrowing Member Takes All Risks.*—A borrowing member of a building and loan association with other stockholders, takes all the risks incident to such relation; and when the association becomes insolvent, he has no more right to withdraw

from its assets premiums paid in by him, than other stockholders have to withdraw the payments made by them.

2. SAME—*Where Withdrawal of Stock is Not Effected Before Association is Declared Insolvent.*—Where a borrowing member of a building and loan association gives notice of his desire to surrender his stock and take credit for its supposed value, and satisfy his mortgage by paying the balance, he thereby places himself in no better position than does any non-borrowing member who, desiring to surrender his stock and withdraw its value, has given the proper notice. In such cases, if the withdrawal has not been actually effected before the association has been declared insolvent by the court, although the member may have given the proper notice, and even obtained judgment for the amount, he will not thereafter be allowed to withdraw, but must abide the result of the marshaling of assets and accept only his *pro rata* share, the same as other members.

**Bill to Foreclose a Mortgage**—Appeal from the Circuit Court of Marion County; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the August term, 1899. Reversed and remanded. Opinion filed March 16, 1900.

GRAHAM & MILLER and L. M. KAGY, attorneys for appellant.

FRANK F. NOLEMAN, attorney for appellees.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a bill in chancery, in the Circuit Court of Marion County, by appellant against appellees, to foreclose a mortgage.

One W. E. Smith, the husband of appellee Lois A. Smith, was a member of and a stockholder in the Illinois Protective Building and Loan Association, and on the 11th day of December, 1893, borrowed of said association the sum of $250. The business was done in the usual manner of transactions of that character, Smith giving, to secure the loan, a mortgage on certain real estate, his wife joining in the mortgage. On June 13, 1898, the association was judicially declared to be insolvent, and appellant, Frank E. Dooling, duly appointed and qualified as receiver, and on the 18th day of October, 1898, W. E. Smith died testate, leaving appellees as his only heirs and devisees.

To the January term, 1899, of the Marion Circuit Court, appellant filed his bill in chancery to foreclose the mortgage, and upon final hearing the court rendered a decree for $135.   Appellant claims that he is entitled to a decree for $294.42, the aggregate sum of items as follows:    Amount of loan, $250; interest due to January 10, 1899, $25.50; premium due at date of appointment of custodian, November 26, 1897, $8; fines due at date of appointment of custodian, $1.20; fire insurance premiums paid, $9.72.

The law is now well established in this State that a borrowing member is not entitled to have his mortgage indebtedness reduced by deducting therefrom the premiums paid by him.    In Choisser v. Young, Receiver, 69 Ill. App. 252, it is said:

" A borrowing member of a building and loan association with other stockholders, takes all the risks incident to such relation; and when the association becomes insolvent, he has no more right to withdraw from its assets premiums paid in by him, than other stockholders have to withdraw the payments made by them."

The proper manner of stating the account in such cases was again before the court in Sullivan, Receiver, v. Spaniol, 78 Ill. App. 125, and in two very recent cases, viz., Dooling, Receiver, v. Davis et al., 84 Ill. App. 393; Dooling, Receiver, v. Coats et al., 86 Ill. App. 411.

Appellees' counsel, as we understand his position, concedes the general rule to be as stated above, and held in the authorities referred to, but contends that the facts of this case take it out of the general rule.   He contends that while the association was still transacting business as a solvent concern, " Smith was ready, willing, and had the ability, and in good faith offered to pay off the mortgage, but was prevented from doing so by the wrongful refusal of the secretary of the association to furnish him a statement of the value of his stock and to forward his release to the local agent," and insists that appellee is entitled to have deducted from the amount of his loan the value of his stock as it was estimated to be before the insolvency was declared.

Some correspondence was carried on through the local

agent between Smith and the secretary of the association. As stated in appellee's brief, it was as follows : In February, 1897, Smith went to agent Culter and notified him that he desired to pay off this loan; Culter wrote the secretary at Springfield, and asked for a statement of Smith's account; on February 15th, the secretary wrote Smith that if he desired to cancel his six shares of stock it would require $121.15 to pay off this loan.

Smith, who was not familiar with the calculation of loan stock, took this letter to one Ira Love, the secretary of a local loan association in Odin, and he estimated the value of the stock from the amount of dues paid thereon, and advised Smith that the secretary of the appellant association had allowed him no credit for any earnings on his stock; thereupon Smith requested Culter to write to the secretary for a statement of the value of his stock, and also that he forward the papers to him (Culter) or any bank or express office in Odin, where the same would be paid if the statement was correct; Culter wrote this letter and followed it up by several more, to the same effect, but received no satisfaction whatever in regard to the value of Smith's stock— merely the peremptory demand that the money should be sent to Springfield if the loan was to be paid.

Smith would not accept the secretary's statement of the value of the stock, because he was told it did not include any profits or earnings. The matter drifted along until the association was declared insolvent—Smith demanding that earnings or profits should be added to the estimated value of the stock, and that a release be sent to the local agent, or to some bank or express office at Odin, and the secretary demanding that Smith should accept the surrender value of his stock as estimated, and remit the $121.15 balance to the general office at Springfield. Smith had at his command sufficient money during this time to have paid this balance, but he did not pay it, nor offer to pay it, nor did he make a tender of any sum.

It is a sufficient answer to appellees' position that the proposed surrender of the stock and settlement of the mortgage by paying the difference was not consummated during the

supposed solvency of the association. When Smith gave notice of his desire to surrender his stock and take credit for its supposed value, and satisfy his mortgage by paying the balance, he thereby placed himself in no better position than does any non-borrowing member, who, desiring to sur- render his stock and withdraw its value, has given the proper notice. In such cases, if the withdrawal has not been actually effected before the association has been de- clared by the court to be insolvent, although the member may have given the proper notice, and even obtained judg- ment for the amount, he will not thereafter be allowed to withdraw, but must abide the result of the marshaling of assets, and accept only his *pro rata* share, the same as other members. This is held in Chapman et al. v. Young, receiver, 65 Ill. App. 131, in which the question is fully considered and ably discussed.

It would be unjust and inequitable to allow Smith's devisees to receive a hundred cents or more on the dollar of the amount he paid on his stock and require that other stockholders should bear the loss. In the present condition of the affairs of the association, equity 'and fair dealing require that appellees shall pay into the funds the full amount of their indebtedness, and when the assets have been col- lected and a distribution ordered, that they shall share on their stocks *pro rata* with all the other stockholders. The court should have rendered a decree for the full amount claimed by appellant.

The decree of the Circuit Court is reversed and the cause remanded, with directions to render and enter a decree not inconsistent with this opinion.