[L. A. No. 2750.  In Bank—October 18, 1912.]

## J. F. GROOVER, Respondent, v. PACIFIC COAST SAV-INGS SOCIETY et al., Defendants; CALIFORNIA TITLE INSURANCE AND TRUST COMPANY, Appellant.

BUILDING AND LOAN ASSOCIATION—MORTGAGE LOAN TO STOCKHOLDER—PLEDGE OF SHARES—INSOLVENCY OF ASSOCIATION—CREDIT OF STOCK PAYMENTS ON LOAN.—A stockholder in a building and loan association, who, in consideration of a loan, gives an ordinary promissory note to the association, in which he unconditionally obligates himself to pay in money the amount stipulated therein, with interest at a specified rate, and secures the same by a mortgage and a pledge of his shares of stock in the association, is not entitled, upon the insolvency of the association, to be credited on his mortgage indebtedness with the amount of installments paid by him on account of the purchase price of his stock, or with the amount of any profits earned by the association which are apportionable to such stock, in the absence of any provision in either the note, mortgage, certificate of stock, or by-laws of the association, that warranted the application of such amounts to the credit of the mortgagor on account of his note, or that rendered the transaction, so far as the stock was concerned, anything more than a mere pledge by way of security for the payment of the note.

ID.—PAYMENT OF LOAN BY MATURED STOCK IN EVENT OF SOLVENCY.—The fact that, if the association had continued a solvent concern, and the mortgagor had continued to make payments on account of his stock until it had attained its par value, he would have been able to discharge his mortgage indebtedness with the amount then due him on account of the stock, is immaterial in determining what the mortgage contract was.

ID.—DUAL RELATION OF STOCKHOLDER AND BORROWER—OBLIGATION TO PAY LOAN—RIGHT OF STOCKHOLDERS TO SHARE IN ASSETS.—Under such a contract, the dual relations of stockholder and borrower occupied by a borrowing stockholder of the association are entirely separate and distinct, and the fact that the association becomes insolvent cannot affect the obligation of the borrower so far as the necessity of paying in full the amount of his loan and interest thereon is concerned. Upon such insolvency, the borrowing stockholder must repay to the association at once the amount loaned with interest, and as to stock payments he is to be treated as a nonborrowing member. After the assets are collected and the indebtedness of the association paid, the fund which may remain is to be distributed *pro rata* among all the stockholders on the basis of the amounts

paid by them respectively as dues on their stock, whether they are borrowing or nonborrowing stockholders.

APPEAL from a judgment of the Superior Court of Los Angeles County. W. P. James, Judge.

The facts are stated in the opinion of the court.

Olney, Pringle & Mannon, and Page, McCutchen, Knight & Olney, for Appellant.

C. M. Fickert, for Respondent.

LORIGAN, J.—A rehearing was granted on this appeal after decision in Department. That decision, written by Justice Angellotti and concurred in by Justices Shaw and Sloss, is as follows:

"This action was brought by plaintiff to obtain the delivery up and cancellation of, and the execution of a good and sufficient release of, a promissory note for eight hundred dollars executed March 10, 1899, by plaintiff to defendant Pacific Coast Savings Society, and a mortgage given by plaintiff to said defendant on the same day, to secure payment of said note, as well as all other indebtedness of the mortgagor to the mortgagee. Defendant and appellant California Title Insurance and Trust Company is the assignee of said note and mortgage, as well as the certificate of stock in the Pacific Coast Savings Society mentioned therein, by assignment made January 9, 1909. The appeal by said last named company is from a judgment granting plaintiff the relief asked upon payment by him of $386.99.

"The case was submitted to the lower court for decision upon an agreed statement of facts, upon which appellant, in addition to claiming that plaintiff was not entitled to the relief asked, moved for relief in accordance with the prayer of its cross-complaint, viz.: that the amount due under the note and mortgage be ascertained, that the same be declared a lien on the mortgaged property, and that the mortgaged property (including the certificate and shares of stock) be sold to pay the same, and attorney fees and costs. This motion was denied.

"The trial court reached its conclusion as to the amount due on the note and mortgage, $386.99 (which amount plaintiff duly offered to pay appellant long prior to the commencement of his action), by deducting from the amount of principal, $800, what would be the cash surrender value of plaintiff's said stock, 'if computed in accordance with the by-laws (of the Pacific Coast Savings Society), and as appears from the rules of computation as stated on the face of the stock itself' viz.: $413.01. The surrender value of such stock is made up, of course, of the installments paid in by the holder on account of the purchase price, and such profits as are allotted to the stock. Whether or not plaintiff was entitled to any credit on his note and mortgage for the amounts paid by him on account of the purchase price of his stock, or for the surrender value thereof, is practically the only question presented by the briefs on this appeal.

"The Pacific Coast Savings Society was incorporated in January, 1891, which was prior to the enactment of the statutes of 1891 relating to building and loan associations, and never elected to continue its existence thereunder. Some of its purposes, as stated in its articles of incorporation, were, generally, to accumulate a fund from contributions of its stockholders, advance payments, proceeds of sale of debentures, and profits from investments; to purchase real estate and erect buildings thereon for its members, and to make loans to its members; to issue and sell first mortgage debenture bonds and to borrow money, and to secure the capital stock to be paid into the treasury on the basis of monthly installments, or otherwise. By its by-laws, various classes of stock were provided for, with only one of which we are here concerned, viz.: 'class "A," ordinary installment shares.' This stock was to be paid for in monthly installments of sixty cents per share, and was payable at its face value, in cash, when the amount paid in and the *pro rata* share of profits in excess of expenses and membership fees and any losses which may occur, equal $100. Each holder of such stock desiring it was entitled to receive for each share of his stock a loan of $100 from the society upon proper application therefor, assignment of his stock, and execution of such mortgage on real estate as the directors might deem sufficient security for the loan. The rate of interest on such loans was to be not less than

six per cent, and such premium as might be fixed. There was no provision in the by-laws relative to loans to be made on such stock which would make the relation of the borrowing stockholder and the company in so far as the loan was concerned, in regard to any matter material in this case, anything other than that of borrower and lender of money, whose respective rights and obligations must be· determined by the stipulations of the note and mortgage given and accepted upon the making of the loan. In other words, while the by-laws were expressly made a part of the mortgage given by. plaintiff, there was nothing in said by-laws to modify or affect the express provisions of both note and mortgage as to the nature and extent of the obligation assumed by the borrower, in so far as any matter material to this case is concerned. The by-laws authorized the directors to issue and sell debenture bonds, and secure the payment of the same with a portion or all of the securities owned by the society. In 1895 $100,000 of such bonds were issued and sold, appellant being made the trustee to hold the securities furnished for the payment of the amounts due thereon, and in January, 1900, plaintiff's note and mortgage, together with his pledged certificate of stock, were regularly assigned to appellant for the purpose of such security. In February, 1905, in an action brought by the attorney-general of the state, the Pacific Coast Savings Society was regularly adjudged to be insolvent, and trustees in liquidation were appointed. The affairs of said society are still in course of liquidation by the trustees under the direction of the court. The judgment of insolvency, which has become final, forbade the transaction of.further business by the society. The debenture bonds secured by the assignment of various mortgages, including. plaintiff's, are still unpaid to the extent of $36,356.70.

"The terms of the note and mortgage given by the plaintiff, constituting the contract between the parties, are such as, in our judgment, to preclude any credit to plaintiff of installments paid by him on account of the purchase price of his stock, or by reason of any profits earned by the society which are apportionable to such stock.

"The note is a simple promissory note for $800, payable 'seven years after date,' with interest at the rate of six per cent per annum payable monthly in advance, the interest

to become part of the principal if not paid, and to bear interest at a specified rate. The only other provisions of the note are those substantially providing that if the monthly interest be not paid within a certain time after it becomes due, or if the monthly installments due upon ten shares of stock of the payee 'pledged as security for the payment' of the note are not paid when due, or if the 'monthly premium due on said loan amounting to the sum of $4.80 per month' payable monthly in advance is not paid when due, then the whole of said principal sum of $800 and the interest thereon shall become forthwith due and payable at the option of the holder, and the recital that the note is secured by mortgage bearing even date and the pledge by the mortgagor of ten shares of the capital stock of the mortgagee.

"The mortgage, covering certain land in Los Angeles County, recites that it is made as security for the payment of this note, which is set out in full therein, and also as security for all further advances and other indebtedness of the mortgagor to the mortgagee that may exist, arise or be contracted for, before the satisfaction hereof, not exceeding at any time the sum of $80, exclusive of interest. It provides that the mortgagor 'as a further security for the payment of said promissory note, and the interest to accumulate thereon, and the said par value of said shares of capital stock, has pledged and he does hereby pledge to said mortgagee all of the aforesaid shares of the capital stock,' and gives the mortgagee the right in case of a foreclosure, or nonpayment of the note, etc., to apply at its option, to such payment, the cash surrender value of said stock, and thereupon become the absolute owner of such stock. The mortgagor promises that he will pay to said mortgagee the par value of said stock in monthly installments of sixty cents per share on the first day of each month until such shares are fully paid by the said payments and the dividends and accumulations thereon, and further 'to pay the monthly premium of $4.80 on said loan on the first day of each and every month during the continuance thereof.' It is further provided that 'all covenants by the mortgagor are intended to run to the mortgagee, its successors and assigns.'

"There is absolutely nothing in note, mortgage or by-laws or in plaintiff's certificate of stock, which certainly compre-.

hend all of the written contract entered into by the parties, that warrants the conclusion that payments of installments on account of the purchase price of the stock may, under any circumstances, be applied to the credit of the plaintiff on account of his note, or that the transactions so far as the stock was concerned was anything more than a mere pledge by way of security for the payment of the note, to which the mortgagee might resort 'at its option' in the enforcement of plaintiff's obligation. The features which in some cases involving contracts between building and loan associations and borrowing members have been held to show that the arrangement between the parties was nothing more nor less than the advancement by the association of the par value of the borrower's stock, upon the undertaking of the borrower properly secured, that he would pay not only interest thereon, but also installments on the purchase price of his stock until such time as, by reason of such payment and the profits thereon, such stock becomes fully paid for, when by reason of such payments the indebtedness is to be considered discharged and the stock canceled, are absent from the transaction here involved, so far as the same is evidenced by the writings constituting the contract between the parties. By the terms of that contract, plaintiff was bound to pay in money the amount stipulated in the note, with interest at the rate of six per cent per annum, and payments on account of his stock were not and cannot now be held to have been payments on account of his indebtedness. The fact that, if the society had continued a solvent concern and he had continued to make payments on account of his stock until the same had attained its par value of $100 per share, he would have been able to discharge his indebtedness with the amount then due him on account of the stock, is of no consequence in determining what the contract between these parties was.

"The distinction between this case and that of *Hale* v. *Barker*, 129 Cal. 419, [62 Pac. 168], so far as the stipulations of the agreement between the parties are concerned, is very marked, and it was expressly recognized by the learned writer of the opinion in that case that it is impossible to lay down any 'hard and fast' rule that shall apply in all cases, 'not only because of the difference in the mode and rules of business adopted by different associations, but because of the

different conditions inserted in mortgages and the varying allegations in complaints.' In that case, according to the opinion, Barker, the borrower, applied for the advancement of $1500 by way of loan or anticipation of the value of his shares at their maturity, the bond given by him recited that the loan was 'an advancement to him by said association of one thousand five hundred dollars, by way of anticipation of the value at their maturity, of thirty shares of the capital stock of said association, now owned by said John A. Barker,' and the mortgage purported to secure the continued monthly payment of the interest on the $1500, and the monthly dues on the stock, until it matured and should be of the value of $100 per share, and also the surrender of said stock at its maturity in payment of said advancement and the premium bid. The court said that it was part of the contract between the mortgagor and the association that when the stock should be fully paid up and of the value of $100 per share, the mortgagor should surrender the stock to the association in full payment and discharge of the mortgage. The association having become insolvent, it was said that the 'contract as to the time and manner in which the mortgage was, by its terms, to be satisfied became impossible of fulfillment.' By reason of the insolvency, it was impossible for the association to continue business and bring the stock to its par value of $100 per share, and therefore impossible to complete the scheme established by the contract, of discharge of the indebtedness by a surrender of the fully paid up shares of stock. Of course, that situation does not exist in this case, for no such scheme is established by the terms of the contract. As put by appellant, 'the only connection here between the note and mortgage, and the stock is that the stock is assigned as collateral security, with the usual covenant on the part of the borrower that he will keep the collateral good.' Assuming *Hale* v. *Barker,* to have been correctly decided, in view of the particular contract there involved, we do not think that it warrants a similar decision upon the contract presented in this case.

"The dual relation to a building and loan association occupied by a borrowing stockholder, and the fact that payments made by him on account of his stock are not payments on account of his debt are fully recognized by two decisions of

this court in Bank, each more recent than *Hale* v. *Barker,* a Department case. In *Henry* v. *Continental Building & Loan Association,* 156 Cal. 667, [105 Pac. 960], where the terms of the note were substantially the same as in the case at bar, the court held that the lower court erred in allowing as credits on the note payments which the agreement into which plaintiffs entered expressly provided should be exclu· sively applied to the payment of the premium and to the extinguishment of the obligation arising by reason of the purchase of the shares of stock required to be bought as a pre-requisite to the exercise by plaintiff of the privilege of secur-ing the eight hundred dollar loan. It was said, quoting ap-provingly from *McNamara* v. *Oakland etc. Assoc.,* 131 Cal. 336, [63 Pac. 670] : 'He (the borrower) occupied the dual relation to the corporation of borrower and stockholder, each of which was distinct from the other. Under the scheme he could not be a borrower without becoming a stockholder, but he could be a stockholder without being a borrower. . . . That the relations of borrower and stockholder are separate and distinct, in associations such as defendant's assignor, seems to be well settled. And it is general law that payments on account of collaterals are not payments on account of the debt they secure; the pledging of shares as collateral security for the payment of a debt is a recognition of the distinct character of the member as a member and a debtor.' It was further said: 'So, in the case at bar, it is clear, from the evidence, that the stock of the respondents had not matured at the time of the commencement of this suit, and conse-quently the payments made on said stock could not, under the terms of the contract of the parties be lumped with payments for other agreed purposes and the total sum thus produced made to extinguish the principal sum of the note.' (See, also, *McNamara* v. *Oakland etc. Assoc.,* 131 Cal. 336, [63 Pac. 670].)

"It is true that in neither of the cases just cited had the association become insolvent, with the consequent result that the shares of stock could never mature. But these cases do emphatically hold that the dual relations of stockholder and borrower occupied by a borrowing stockholder under such a contract as we have before us are entirely separate and dis-tinct. It would seem to follow necessarily that, under such

a contract, as we have before us, the fact that the association becomes insolvent cannot affect the obligation of the borrower so far as the necessity of paying in full the amount of his loan and interest thereon is concerned, and the payments made by him on account of the purchase price of the stock cannot be credited as payments made on account of his loan. This is held by the overwhelming weight of authority. The reasoning of the cases so holding appears to us to be unanswerable. As substantially stated in *Curtis* v. *Granite State etc. Assoc.,* 69 Conn. 6, [61 Am. St. Rep. 17, 36 Atl. 1023], the borrowing stockholder stands in a double relation to the association; he is a member—investor—as well as a borrower. As a member, he is bound to contribute to the losses and expenses of the common enterprise. If the amount of dues paid in by him as a member is credited back to him as a debtor, he will receive in full the amount paid upon his stock, while the other members who have not become borrowers may receive only a small percentage of the amount paid in by them. Where such a company becomes insolvent, nothing remains but to wind it up in such a manner as to do equity to the creditors and between the members themselves. As regards the latter, care should be taken to adjust the burdens equally, and not to throw either upon borrowers or nonborrowers more than their respective shares. 'That result may be reached by requiring the borrower to repay what he actually received with interest. He would then be entitled, after the debts of the corporation are paid, to a *pro rata* dividend with the nonborrower for what he has paid upon his stock. He will thus be obliged to bear his proper share of the losses.' And in *Coltrane* v. *Blake,* 113 Fed. 785, [51 C. C. A. 457], it was said 'The rule in the United States is that the capital stock of a corporation is impressed with a trust for the payment of the creditors of the corporation (citing cases). Especially is this the case with insolvent corporations. The capital stock of a building and loan association is composed of the subscriptions to it, either by cash or dues. If any part of those dues is diverted from the claims of creditors generally, and used for the benefit of a single stockholder by way of credit on a debt due by him to the corporation, it is a misuse of trust funds, and so unlawful.' (See, also, *Towle* v. *American etc. Society,* 61 Fed. 446; *Weir* v. *Granite etc.*

*Assoc.*, 56 N. J. Eq. 234, [38 Atl. 643]; *Taylor* v. *Clark*, 74 Ark. 220, [85 S. W. 231]; *Hale* v. *Cairns*, 8 N. D. 145, [73 Am. St. Rep. 746, 44 L. R. A. 261, 77 N. W. 1010]; *Dooling* v. *Smith*, 89 Ill. App. 26; *Clark* v. *Lopp*, 80 Mo. App. 542; *Strohen* v. *Franklin etc. Assoc.*, 115 Pa. St. 273, [8 Atl. 843]; *Rogers* v. *Hargo*, 92 Tenn. 35, [20 S. W. 430].) While there are some decisions not in accord with this view, we are satisfied that upon the question of the application in payment of the loan of amounts paid on account of stock, the views stated in the opinions cited are clearly correct, at least in cases where the terms of the contract between the borrower and the association are substantially the same as those in the case at bar. As to such a case as this, viz., one where the borrower's mortgage has passed by assignment to one from whom the association has borrowed money and to whom it has transferred members' obligations as security, Mr. Endlich in his work on Building Associations, 2d ed., section 531, says: 'In such cases, . . . , when the society has become insolvent, the right of the outside creditor to be paid speedily requires that the borrowing member pay at once what his mortgage then stands for, to wit: the amount actually received with unpaid interest, without credit for his stock-payments, and that he be relegated to the final distribution of the corporate assets for his dividend upon the latter.'

"In view of what we have said, it is clear that plaintiff was not entitled to have the note and mortgage canceled upon the payment by him of $386.99."

It is earnestly insisted by respondent on this rehearing that the rule declared and adopted in the foregoing opinion as governing the settlement of the indebtedness of a borrowing stockholder to a building and loan association of which he is a member, is contrary to the decided weight of prevailing American authority. Under this insistence we have given that matter further consideration. It is conceded in the Department decision that there are some authorities which declare a rule different from the one there adopted and it is this line of decisions which counsel for respondent claims announces the more equitable rule to be applied in the adjustment of indebtedness between the borrowing member and the insolvent association and is the one which he further insists is sustained by the decided weight of authority.

The growth of building and loan associations throughout the Union in recent years has been attendant with a vast amount of litigation and the decisions of the courts have not been harmonious with respect to the rule to be applied in settlements between the association and its borrowing members. This diversity has arisen in a large measure through differences in statutory provisions governing the associations in the several states, differences in the rules or by-laws of respective associations and the varied forms of contracts which have been entered into between the association and its members and which have come before the courts for construction. No great difficulty has been experienced in applying an equitable rule of settlement where the questions have arisen between a borrowing member and an association which is solvent. It has arisen principally where the association has become insolvent and in an effort by courts under such circumstances to formulate a rule which may be applied so as to operate equitably as to the creditors and likewise between the borrowing and nonborrowing members of the association. It is well settled by all the authorities that when insolvency intervenes the borrowing members must pay up their mortgage indebtedness to the insolvent association at once, notwithstanding such debts by the contract of loan have not matured. It is to such a situation that the courts in the different states have endeavored to apply a rule which would be equitable under the changed conditions produced through the insolvency, and it is in such an endeavor that the inharmony arose in the decisions. This diversity of opinion resulted in the early formulation and application in different jurisdictions of two general rules referred to in the authorities as the Maryland and Pennsylvania rules respectively; the former so called because laid down by the supreme court of Maryland; the latter because announced by the supreme court of Pennsylvania.

The Maryland rule as early declared in that jurisdiction and which to a limited extent has been applied in other states is that on the insolvency of the association the borrowing member should be charged with the amount loaned him by the association with interest thereon, and credited with all sums paid as dues upon his stock and the premium and interest paid upon his loan. It is this Maryland rule which respond-

ent contends should be applied here and which he insists is sustained by the weight of authority. In support of this claim he cites a line of cases from Maryland of which *Waverly etc. Assoc.* v. *Buck,* 64 Md. 338, [1 Atl. 561], will alone be particularly mentioned: *Buist* v. *Bryan,* 44 S. C. 121, [51 Am. St. Rep. 787, 29 L. R. A. 127, 21 S. E. 537]; *Butson* v. *Home Sav. & Trust Co.,* 129 Iowa, 370, [113 Am. St. Rep. 463, 4 L. R. A. (N. S.) 98, 105 N. W. 645]; *Cook* v. *Kent,* 105 Mass. 246; *Randall* v. *Nat'l. Building Assoc.,* 42 Neb. 809, [29 L. R. A. 133, 60 N. W. 1019]; *Building Assoc.* v. *Tinsley,* 96 Va. 322, [31 S. E. 508]; *Snyder* v. *Fidelity Sav. Assoc.,* 23 Utah, 291, [64 Pac. 870]; *Interstate S. & L. Soc.* v. *Cairns,* 16 Wash. 215, [47 Pac. 509]; *Hale* v. *Stenger,* 22 Wash. 516, [61 Pac. 156]; *Fidelity Sav. Assoc.* v. *Shea,* 6 Idaho, 405, [55 Pac. 1023]; *Western Sav. Bank* v. *Houston,* 38 Or. 377, [65 Pac. 611]; *Brownlie* v. *Russell* (Eng.), H. L. 8 App. Cas. 235.

A number of cases from the federal courts are also cited by respondent, but of these cases it may be said (and this will apply equally to a number cited from said courts by appellant) that they need not be considered, as they follow the decisions of the state courts in applying either rule 'as it is adopted by the higher courts of the states and as the decisions of these state courts are cited and relied on by either side, the federal cases, therefore, can aid nothing in determining the prevailing rule.

It will be observed on an examination of the authorities cited by respondent from Nebraska, Utah, Washington, Oregon, and Idaho that in none of the cases in those jurisdictions (save *Hall* v. *Stenger*) was there any question as to what rule should be applied between borrowing members and insolvent associations. The question whether the Maryland rule or the Pennsylvania rule shall be applied can only arise when the association has become insolvent. In these western cases cited the actions were either brought by the association to foreclose mortgages accompanied with assignments of their stock given to the association by borrowing members, or were suits brought by such members seeking a cancellation of their mortgages under a claim that a credit on their loans of the withdrawal value of their stock in the association, but which the association refused to make, was sufficient to satisfy their

indebtedness.   In all those cases the association was solvent
and as is common to building and loan associations it was
provided in the by-laws that a member thereof might at any
time upon the payment of his indebtedness to the association
surrender his stock and be paid its withdrawal value.   The
right to have such withdrawal value applied on the loan was
the question involved in those cases, the claim of the associa-
tion being that the borrowing members by forfeiture of their
stock through nonpayment of dues or for other reasons, had
lost their interest in the stock and hence were not entitled
to have such withdrawal value applied on their indebtedness.
The courts held that these claims of the association which
were directed against the right of ownership of the stock by
the borrowing members were untenable and that as the latter
had a right according to the by-laws of the association to be
paid the withdrawal value of their stock, they were entitled
to have it applied in payment on the loan.   There was no
discussion of the Maryland rule or any other equitable rule
to be applied in cases of insolvency of the asociation.   Of
course, where the association is solvent and a member who
obtains a loan partially secured by an assignment of his stock
is accorded under the rules of the association the right of
severing his membership therewith at any time on payment
of his indebtedness and to be paid the actual value of his
stock, there ought to be little room for questioning but that
he has the right to have all that he has paid in—at least the
dues on his stock—which goes to make up its withdrawal value
applied in satisfaction of his loan, and this is all that the cases
in the various states referred to decided.   But where the
association becomes insolvent a different situation is pre-
sented.   A stockholder may not then withdraw.   All that
remains to be done is to wind up the affairs of the association.
The actual value of its shares cannot be determined until
this has been done; its assets collected and its indebtedness
paid.   Until then it cannot be said that the stock has any
withdrawal value.   It is to such a situation as this, proceed-
ing from the insolvency of the association, that the courts
have endeavored to apply some equitable rule with a view to
fairly conserving the rights of creditors of the association
and adjusting the rights of its borrowing and nonborrowing
members between themselves which has resulted in the formu-

lation of the respective Maryland and Pennsylvania rules, and only cases which involve the insolvency of the association and where one or the other of these views have been considered and applied can be of any value in determining which rule is sustained by the better reasoning and is the one more generally applied. In this view the authorities just referred to as they deal solely with the right of borrowing members in solvent associations can aid nothing in determining that question.

As to the other authorities cited by respondent, they do, as claimed by him, announce and apply the Maryland rule in cases of insolvency, but an examination of those authorities will disclose that the contract of loan was essentially different from that involved in the case at bar. Either the loan was an advancement in anticipation of the value of the member's stock at maturity and was to be satisfied by a surrender of such stock when it matured, or the contract of loan in express terms or the by-laws which were made part of the contract, provided that the monthly payments on the mortgage loan and the monthly payments on the stock assigned as collateral security should be made until the stock matured and that upon such maturity the stock should be surrendered to the association in payment and cancellation of the debt.

In *Buist* v. *Bryan*, 44 S. C. 121, [51 Am. St. Rep. 787, 29 L. R. A. 157, 21 S. E. 537], the contract of loan provided that interest and dues should be paid until the shares of stock matured and said shares were then to be surrendered to the association in satisfaction of the loan. In *Waverly etc. Assoc.* v. *Buck,* 64 Md. 338, [1 Atl. 561], and *Buston* v. *Home Sav. & Trust Co.,* 129 Iowa, 370, [113 Am. St. Rep. 463, 4 L. R. A. (N. S.) 98, 105 N. W. 645], the contracts called for the extinguishment of the loan upon the maturity of the shares of stock. In *Cook* v. *Kent,* 105 Mass. 246, the contract provided that the borrowing member was to pay dues "until the payment of the dues amounted to the principal sum of the loan." In *Hale* v. *Stenger,* 22 Wash. 516; [61 Pac. 156], it does not appear what the particular contract was, the court saying that "the loan was made in the usual terms and conditions common to loans by building and loan associations to their subscribers." In *Brownlie* v. *Russell* (Eng.), H. L. 8 App. Cas. 235, the contract provided that the dues

should be credited on the loan and the House of Lords in that case, while conceding that the contract was clearly to the advantage of borrowing members and hard upon the nonborrowing members, sustained a right to the application of the dues to the payment of the indebtedness because "it was the contract."

It was the existence of these express contractual relations as to the loan and its repayment which doubtless entered as an important factor in inducing the Maryland court to the original announcement of the rule by it and its acceptance in the limited number of jurisdictions which have followed it, the reasoning of the American courts being that as the payment of the mortgage debt was by the contract between the borrowing member and the association to be accomplished only by the maturity of the shares, and this was rendered impossible through the insolvency of the association, the contract between them was abrogated *ab initio*, and that being so abrogated the simple relation of debtor and creditor between the borrowing stockholder and the association existed from the beginning, and the former was entitled accordingly under the rule of partial payments to a credit on his loan for all payments made to the association prior to the insolvency.

But in the case at bar we have no such peculiar contract as was involved in the several cases just referred to. In the case here under consideration there is nothing in the note or mortgage, the certificate of stock assigned as collateral security, or the by-laws of the association which, as is said in the Department decision, comprehended all the written contract between the parties, which provided that the payment of dues on the stock should be applied to the credit of the loan, or that the stock was anything else than a pledge as collateral security for the payment of the amount borrowed. This is clearly pointed out in the Department decision and if it be conceded that the Maryland rule for which respondent contends should prevail, even to the extent that it has been applied to particular contracts such as were under consideration in the cases which adopted or followed it, it certainly is not the more generally prevailing or accepted rule which governs contracts and loans between borrowing members and associations such as is here involved.

While it is contended by appellant that the Maryland rule is *in toto* opposed now to the current of recent authority, we perceive no occasion for determining that matter. The whole subject is discussed and considered in many of the cases presently to be cited. That rule certainly has not been extended so as to apply to a contract such as we have here.

In more recent years as building and loan associations have largely expanded throughout the United States they have become a source of extensive litigation; their objects and purposes have been more plainly understood and the courts in the large field of litigation which they have afforded have had occasion to more thoroughly consider than in earlier years the rights of creditors and the relation of borrowing and non-borrowing members to the association, between themselves when a condition of insolvency, which was never anticipated, has occurred. As a result the great weight and prevailing current of authority is that where insolvency occurs the dual relation which the member occupies to the association—that of stockholder and borrower—should be kept separate and distinct. As a borrower he is required to pay back to the association the amount loaned him, with interest. As a stockholder he has subscribed for capital stock of the association upon which he has agreed to pay monthly dues and has assigned such stock as collateral security for the loan. Under this contract of loan the payment of dues on his stock is not credited as a payment on his loan. Such payment is on his purchase of the stock. In relation to such stock he is a stockholder and not a debtor. Upon the insolvency of the association his contract to make further payments on his stock subscription has ended but his relation as a stockholder continues until the liquidation of the association. What he has paid in on his stock, in common with what has been paid in by the other members, with such other sources of revenue, have gone to make up the capital stock of the association, which is a trust fund for the benefit of the creditors thereof. From this fund the debts of the association must be paid and the value of the shares of the insolvent association will be just what the assets of the association amount to after liquidation, and cannot be ascertained until the debts and losses of the association are paid. As a stockholder the borrowing member is liable for his proportion of such outstanding indebtedness.

Whatever losses are sustained must be borne by all the stockholders, both borrowing and nonborrowing members. If, however, the borrowing stockholders are to have credited on their loans as a payment thereon of the amounts which they have paid in as dues on their stock, such members escape the burden of paying any of the indebtedness or losses of the association. They get back the full benefit of everything they have paid in as a satisfaction toward their loans, while the nonborrowing members who have paid in the same dues bear all the losses and consequently get not only no benefit from the dues which have been paid in by the borrowing members but necessarily, as in every case of insolvency, get less than they actually paid in as their stock dues. To prevent what would thus be obviously unfair, the courts have generally adopted as the equitable rule to be applied in such cases the one early announced by the supreme court of Pennsylvania. Under that rule of settlement the borrowing stockholder of the insolvent association must repay to it at once the amount loaned with interest. Payments of dues on his stock will not be allowed as credits on his loan. As to stock payments he is to be treated as a nonborrowing member. After the assets are collected and the indebtedness of the association paid, the fund which may remain is to be distributed *pro rata* among all the stockholders on the basis of the amounts paid by them respectively as dues on their stock, whether they are borrowing or nonborrowing stockholders. Under this rule the rights of the creditors of the association are protected and the members, both borrowing and nonborrowing, are placed upon an equally equitable footing. In laying down this rule it is said in *Strohen* v. *Franklin etc. Assoc.,* 115 Pa. St. 273, [8 Atl. 843], (from which decision the rule is known as the Pennsylvania rule) : "The insolvency of the company puts an end to its operation as a building association. To a certain extent it also ends the contracts between it and its members, and nothing remains but winding it up in such manner as to do equity to the creditors and between the members themselves. As regards the latter care should be taken to adjust the burden equally and not throw upon either the borrowers or nonborrowers more than their respective shares. This result may be reached by requiring the borrower to pay what he actually received with interest. He should then be entitled, after the

debts are paid, to a *pro rata* dividend with the nonborrower of what he has paid on his stock. He will thus be obliged to bear his proper share of loss. To allow him to credit upon his mortgage his payments on his stock would enable him to escape responsibility for his share of the losses and throw them wholly upon the nonborrowers. In other words, the borrower would escape without loss. It will not do to administer the affairs of an insolvent corporation in this manner.'' The rule as thus laid down is now generally accepted by the text-writers and in the adjudicated cases as sustained by clear equitable considerations. It is the rule laid down in Endlich on Building Associations, 2d ed., sec. 477, and Thompson on Building Associations, 2d ed., sec. 171, p. 344, where the author declares that the rule laid down in *Buist* v. *Bryan,* 44 S. C. 121, [51 Am. St. Rep. 787, 29 L. R. A. 127, 21 S. E. 537], (the case principally cited in support of the Maryland rule), is ''an exception to the recent trend of authorities,'' and which he further declares is against allowing dues on the stock to be credited on the loan as an unjust preference. Several cases are cited in the Department decision sustaining this rule in its application to the case at bar which it would be unnecessary to again cite save as an orderly enumeration of the decisions in the several states showing how extensively the rule is being adopted and applied. These authorities are *Southern B. & L. Assoc.* v. *Anniston L. etc. Assoc.,* 101 Ala. 582, [46 Am. St. Rep. 138, 29 L. R. A. 120, 15 South. 123]; *Taylor* v. *Clark,* 74 Ark. 220, [85 S. W. 231]; *Curtis* v. *Granite State etc. Assoc.,* 69 Conn. 6, [61 Am. St. Rep. 17, 36 Atl. 1023]; *Ottensoser* v. *Scott,* 47 Fla. 276, [110 Am. St. Rep. 137, 4 Ann. Cas. 1076, 66 L. R. A. 346, 37 South. 161]; *Dooling* v. *Smith,* 89 Ill. App. 26; *Wohlford* v. *Citizens' Bldg. etc. Assoc.,* 140 Ind. 662, [29 L. R. A. 177, 40 N. E. 694]; *Marion Trust Co.* v. *Trustees,* 153 Ind. 96, [54 N. E. 444]; *Rogers* v. *Rains,* 100 Ky. 295, [38 S. W. 483]; *King* v. *Brewer,* 121 Mich. 343, [80 N. W. 238]; *Clark* v. *Lopp,* 80 Mo. App. 542; *Gary* v. *Verity,* 101 Mo. App. 586, [74 S. W. 161]; *Knutson* v. *N. W. L. Assoc.,* 67 Minn. 201, [64 Am. St. Rep. 410, 69 N. W. 889]; *Weir* v. *Granite State etc.,* 56 N. J. Eq. 234, [38 Atl. 643]; *Meares* v. *Duncan,* 123 N. C. 203, [31 S. E. 476]; *Hale* v. *Cairns,* 8 N. D. 145, [73 Am. St. Rep. 746, 44 L. R. A. 261, 77 N. W. 1010]; *Anselme* v. *American*

*B. & L. Assoc.*, 63 Neb. 525, [88 N. W. 665] ; *Monier* v. *Clark,* 12 N. M. 118, [75 Pac. 35] ; *People* v. *New York B.' & L. Assoc.*, 101 N. Y. App. Div. 484, [92 N. Y. Supp. 62] ; *Eversmann* v. *Schmitt,* 53 Ohio St. 174, [53 Am. St. Rep. 632, 29 L. R. A. 184, 41 N. E. 139] ; *Strohen* v. *Franklin ,etc. L. Assoc.*, 115 Pa. St. 273, [8 Atl. 843] ; *Carpenter* v. *Richardson,* 101 Tenn. 176, [46 S. W. 452] ; *Price* v. *Kendall,* 14 Tex. Civ. App. 26, [36 S. W. 810] ; *Leahy* v. *National B. & L. Assoc.*, 100 Wis. 555, [69 Am. St. Rep. 945, 76 N. W. 625] ; *Young* v. *Bldg. Assoc.*, 48 W. Va. 512, [38 S. E. 670] ; *Building & Loan Assoc.* v. *McPhilamy.& Hawks,* 81 Miss. 61, [95 Am. St. Rep. 454, 59 L. R. A. 743, 32 South. 1001].

All these cases just referred to deal with the rule of settlement to be applied where the association has become insolvent, and, in connection with those cited in the Department opinion, fully sustain the conclusion there reached that respondent was not entitled to have his mortgage debt credited with the dues paid on his stock pledged as collateral security for the loan.

The judgment is reversed and the cause remanded for a new trial.

Angellotti, J., Shaw, J., and Melvin, J., concurred.

Rehearing denied.